## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **GREAT WESTERN BANK,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.** 2:20-cv-2032 |
| ) | |
| **PINNACLE REGIONAL HOSPITAL, INC.** ) | |
| **F/K/A BLUE VALLEY HOSPITAL, INC.,** ) | |
| **BLUE VALLEY HEALTH CARE SYSTEM,** ) | |
| **INC., BLUE VALLEY SURGICAL** ) | |
| **ASSOCIATES, LLC, PINNACLE HEALTH** ) | |
| **CARE SYSTEM, INC., PINNACLE** ) | |
| **REGIONAL HOSPITAL, LLC F/K/A** ) | |
| **COOPER COUNTY COMMUNITY** ) | |
| **HOSPITAL, LLC, JOY'S MAJESTIC** ) | |
| **PARADISE, INC., ROJANA REALTY** ) | |
| **INVESTMENTS, INC., and** ) | |
| **DOUGLAS C. PALZER,** ) | |
| ) | |
| **Defendants.** ) | |

## VERIFIED COMPLAINT

Plaintiff, Great Western Bank ("Bank"), a South Dakota bank, for its Complaint against

Defendants Pinnacle Regional Hospital, Inc. f/k/a Blue Valley Hospital, Inc., Blue Valley Health

Care System, Inc., Blue Valley Surgical Associates, LLC, Pinnacle Health Care System, Inc.,

Pinnacle Regional Hospital, LLC f/k/a Cooper County Community Hospital, LLC (collectively,

Pinnacle Regional Hospital, Inc. f/k/a Blue Valley Hospital, Inc., Blue Valley Health Care

System, Inc., Blue Valley Surgical Associates, LLC, Pinnacle Health Care System, Inc., Pinnacle

Regional Hospital, LLC f/k/a Cooper County Community Hospital, LLC are referred to hereafter

as the "Health Care Defendants"), Joy's Majestic Paradise, Inc., Rojana Realty Investments, Inc.

(collectively, the Health Care Defendants, Joy's Majestic Paradise, Inc., and Rojana Realty

Investments, Inc. are referred to as the "Corporate Defendants"), and Douglas C. Palzer

(collectively, Douglas C. Palzer and the Corporate Defendants are referred to hereafter as the "Defendants") states and alleges as follows:

## Preliminary Statement

1.       This action arises from Defendants' failure to comply with a series of loan documents and guaranty agreements executed in favor of Bank beginning in August 2017 (collectively, the loan transactions described herein are referred to as the "Loans").  Defendants are in default under the loan documents and guaranties and have failed to repay Bank. Defendants have no access to additional borrowing under the Loans to fund their continued operations and have refused Bank's attempts to restructure the Loans.  As of January 15, 2020, Defendants collectively owe Bank at least $24,341,887.04 in unpaid principal, interest, late fees, and other charges, plus attorneys' fees.

2.       As described herein, the Loans at issue are secured by certain real and personal property, including, but not limited to, Missouri real property titled in the name of Pinnacle Regional Hospital, LLC f/k/a Cooper County Community Hospital, LLC (defined below as Pinnacle Hospital Boonville) on which that entity operates a hospital in Boonville, Missouri, as well as accounts receivables, inventory, vehicles, and other personal property of the Defendants.

3.       Defendants operate certain health care and related businesses, including hospitals in Overland Park, Kansas and Boonville, Missouri.  These businesses, however, are collapsing. For instance, in 2018, Pinnacle Regional Hospital, Inc. f/k/a Blue Valley Hospital, Inc. (defined below as Pinnacle Hospital OP) lost its ability to receive Medicare and Medicaid payments. Following this and other setbacks, Defendants have failed to pay Bank as agreed and have struggled to pay their employees and vendors, some of whom have recently filed suit seeking repayment of delinquent debts.

2

4.      For months leading up to the filing of this case, the Health Care Defendants have also failed to provide required financial information to Bank.  For instance, the Health Care Defendants last submitted to Bank information on eligible accounts receivable (i.e. a required borrowing base certificate and accounts receivable aging) for the time period ending on September 30, 2019, although borrowing base certificates and accounts receivable agings are required to be submitted monthly.  The Health Care Defendants have also failed to provide Bank with audited financial statements for December 31, 2018, as well as required quarterly financial statements for September 30, 2019.

5.      Based on the last information that Bank does have, the Health Care Defendants' financial condition appears to be deteriorating, with high accounts payable and decreasing receivables.  Given the uncertainty surrounding the Health Care Defendants' financial condition, the appointment of a receiver is necessary to safeguard and protect the value of Bank's collateral and preserve the value of the Health Care Defendants' property for the benefit of all creditors.

6.      Accordingly, in addition to seeking judgment for breach of the loan and guaranty documents against Defendants, Bank seeks the expedited appointment of a receiver to take control of the Health Care Defendants' businesses and personal property, assess whether a sale of these entities or their assets would maximize value, and, following that assessment, implement an organized sale process, either of the Health Care Defendants as a going concern, or of their assets.

### The Parties

7.      Bank is a South Dakota banking organization with its principal place of business in South Dakota.

WA 14122185.1

8.    Defendant Pinnacle Regional Hospital, Inc. f/k/a Blue Valley Hospital, Inc.[1] ("Pinnacle Hospital OP") is a Kansas corporation with its principal place of business in Kansas, and it may be served through its registered agent John Chairatana at 12920 Metcalf Ave., Suite 250, Overland Park, Kansas 66213.

9.    Defendant Blue Valley Surgical Associates, LLC ("Blue Valley Surgical") is a Kansas limited liability company with its principal place of business in Kansas, and it may be served through its registered agent John Chairatana at 12920 Metcalf Ave., Suite 250, Overland Park, Kansas 66213.

10.    Defendant Blue Valley Health Care System, Inc. ("Blue Valley Health") is a Kansas corporation with its principal place of business in Kansas, and it may be served through its registered agent John Chairatana at 12920 Metcalf Ave., Suite 250, Overland Park, Kansas 66213.

11.    Defendant Pinnacle Health Care System, Inc. ("Pinnacle Health") is a Missouri corporation with its principal place of business in Missouri, and it may be served through its registered agent Joy's Majestic Paradise, Inc. at 14366 SW County Road 3988, Hume, Missouri 64752.

12.    Defendant Pinnacle Regional Hospital, LLC f/k/a Cooper County Community Hospital, LLC[2] ("Pinnacle Hospital Boonville") is a Delaware limited liability company with its principal place of business in Missouri, and it may be served through its registered agent the Corporation Trust Company at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

---

[1] On December 20, 2018, Blue Valley Hospital, Inc., a Kansas corporation, changed its name to Pinnacle Regional Hospital, Inc.

[2] On December 21, 2018, Cooper County Community Hospital, LLC, a Delaware limited liability company, changed its name to Pinnacle Regional Hospital, LLC.

4

13.     Defendant Joy's Majestic Paradise, Inc. ("Joy's") is a Missouri corporation with its principal place of business in Missouri, and it may be served through its registered agent Douglas C. Palzer at 12920 Metcalf Ave, Suite 250, Overland Park, Kansas 66213.

14.     Defendant Rojana Realty Investments, Inc. ("Rojana") is a Kansas corporation with its principal place of business in Kansas, and it may be served through its officer, Douglas Palzer at 24 Panarama Crest Ave., Las Vegas, Nevada 89135.

15.     Defendant Douglas C. Palzer ("Palzer") is an individual residing in Nevada and may be served at 24 Panarama Crest Avenue, Las Vegas, Nevada 89135.

## Jurisdiction and Venue

16.     For purposes of subject matter jurisdiction, Bank is a citizen and resident of South Dakota.

17.     Defendants Pinnacle Hospital OP, Blue Valley Surgical, Blue Valley Health, and Rojana are citizens and residents of Kansas.

18.     Defendant Pinnacle Hospital Boonville is a citizen and resident of Delaware and/or Missouri.

19.     Defendants Pinnacle Health and Joy's are citizens and residents of Missouri.

20.     Defendant Palzer is a citizen and resident of Nevada.

21.     The parties are of diverse citizenship.

22.     The matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

23.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a).

24.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in the District of Kansas and a

WA 14122185.1

substantial part of the property that is the subject of this action is situated in the District of Kansas.

**Background**

Blue Valley Borrowers' Loans

A.   **August 25, 2017 Loans**

25.   On or about August 25, 2017, Pinnacle Hospital OP, Blue Valley Surgical, and Blue Valley Health (collectively, the "Blue Valley Borrowers") executed the promissory note in the original principal sum of $10,000,000 (as amended, the "LOC Note") that accompanies this Complaint as **Exhibit 1**.

26.   The LOC Note evidences a revolving credit facility (the "LOC") and, pursuant to the 8/25/17 Loan Agreement (defined below), the LOC Note was limited to the lesser of (a) $10,000,000; or (b) an amount equal to eighty percent (80%) of Eligible Accounts (as defined in the 8/25/17 Loan Agreement) of the Blue Valley Borrowers less certain reserves provided for in the 8/25/17 Loan Agreement.  Under the 8/25/17 Loan Agreement, Eligible Accounts exclude accounts receivable more than ninety (90) days after invoice date and all Medicare and Medicaid receivables.

27.   On or about August 25, 2017, the Blue Valley Borrowers executed the promissory note in the original principal sum of $1,805,000 ("5/7 Year Term Note") that accompanies this Complaint as **Exhibit 2**.

28.   In exchange for the 5/7 Year Term Note and as evidenced therein, Bank loaned the Blue Valley Borrowers the sum of $1,805,000 ("5/7 Year Loan").

29.   On or about August 25, 2017, the Blue Valley Borrowers executed the promissory note in the original principal sum of $210,000 ("4 Year Term Note") that accompanies this Complaint as **Exhibit 3**.

6

30.     In exchange for the 4 Year Term Note and as evidenced therein, Bank loaned the Blue Valley Borrowers the sum of $210,000 ("4 Year Term Loan").

31.     On or about August 25, 2017, the Blue Valley Borrowers executed the promissory note in the original principal sum of $1,380,000 ("5/8 Year Term Note") that accompanies this Complaint as **Exhibit 4**.

32.     In exchange for the 5/8 Year Term Note and as evidenced therein, Bank loaned the Blue Valley Borrowers the sum of $1,380,000 ("5/8 Year Loan").

33.     In connection with the LOC, the 5/7 Year Term Loan, the 4 Year Term Loan, and the 5/8 Year Term Loan (collectively, the "8/25/17 Loans"), the Blue Valley Borrowers executed the loan agreement dated August 25, 2017 (the "8/25/17 Loan Agreement") that accompanies this Complaint as **Exhibit 5.**

34.     On or about August 25, 2017, the Blue Valley Borrowers executed the business security agreement ("8/25/17 Security Agreement"), which secures all present and future indebtedness of the Blue Valley Borrowers to Bank, and that accompanies this Complaint as **Exhibit 6**.

35.     The 8/25/17 Security Agreement conveyed a security interest in the Blue Valley Borrowers' accounts, instruments, documents, chattel paper, general intangibles, including payment intangibles, contract rights, investment property (including any securities entitlements and/or securities accounts held by the Blue Valley Borrowers), securities and certificates of deposit, deposit accounts and letter of credit rights; inventory; furniture and equipment; and fixtures (the "8/25/17 Collateral").

WA 14122185.1

36.     Bank perfected its security interest in the 8/25/17 Collateral by filing a financing statement with the Kansas Secretary of State and by having its lien noted on certificates of title for titled equipment.

37.     On or about August 29, 2018, the Blue Valley Borrowers executed the Loan Modification Agreement (the "First Loan Modification Agreement") that accompanies this Complaint as **Exhibit 7**.

38.     In the First Loan Modification Agreement, the LOC Note was modified to extend the maturity date of the LOC from August 25, 2018 to October 25, 2018.

39.     On or about October 3, 2018, the Blue Valley Borrowers executed the Second Loan Modification Agreement (the "Second Loan Modification Agreement") that accompanies this Complaint as **Exhibit 8**.

40.     In the Second Loan Modification Agreement, the LOC Note was modified to extend the maturity date of the LOC from October 25, 2018 to September 30, 2019 and to increase the maximum principal amount of the LOC from $10,000,000 to $12,000,000.

41.     Pursuant to the Second Loan Modification Agreement, borrowings under the LOC Note were limited to the lesser of (a) $12,000,000 or (b) an amount equal to eighty (80%) of Eligible Accounts of the Blue Valley Borrowers and Pinnacle Hospital Boonville less certain reserves provided for in the 8/25/17 Loan Agreement, as amended.

42.     On or about September 30, 2019, the Blue Valley Borrowers executed the Third Loan Modification Agreement (the "Third Loan Modification Agreement," and together with the LOC Note, the 5/7 Year Term Note, the 4 Year Term Note, the 5/8 Term Note, the 8/25/17 Loan Agreement, First Loan Modification Agreement, Second Loan Modification Agreement, and the

WA 14122185.1

8/25/17 Security Agreement, the "<u>8/25/17 Loan Documents</u>") that accompanies this Complaint as **Exhibit 9**.

43.     In the Third Loan Modification Agreement, the LOC Note was modified to extend the maturity date of the LOC from September 30, 2019 to September 30, 2020.

**B.     April 16, 2018 Loan**

44.     On or about April 16, 2018, the Blue Valley Borrowers executed the promissory note in the original principal sum of $669,000 ("<u>4/16/18 Term Note</u>") that accompanies this Complaint as **Exhibit 10**.

45.     In exchange for the 4/16/18 Term Note and as evidenced therein, Bank loaned the Blue Valley Borrowers the sum of $669,000 ("<u>4/16/18 Term Loan</u>").

46.     In connection with the 4/16/18 Term Loan, the Blue Valley Borrowers executed the loan agreement dated April 16, 2018 (the "<u>4/16/18 Loan Agreement</u>") that accompanies this Complaint as **Exhibit 11.**

47.     On or about April 16, 2018, the Blue Valley Borrowers executed the business security agreement ("<u>4/16/18 Security Agreement</u>," and together with the 4/16/18 Term Note and the 4/16/18 Loan Agreement, the "<u>4/16/18 Loan Documents</u>"), which secures all present and future indebtedness of the Blue Valley Borrowers to Bank, and that accompanies this Complaint as **Exhibit 12**.

48.     The 4/16/18 Security Agreement conveyed a security interest in the Blue Valley Borrowers' accounts, instruments, documents, chattel paper, general intangibles, including payment intangibles, contract rights, investment property (including any securities entitlements and/or securities accounts held by the Blue Valley Borrowers), securities and certificates of deposit, deposit accounts and letter of credit rights; inventory; furniture and equipment; fixtures;

9

and J-750 Medical Imaging Printer, Series 9800 Plus C-Ann Imaging System, and three (3) 2017 Honda Odyssey vans (the "4/16/18 Collateral").

49.     Bank perfected its security interest in the 4/16/18 Collateral by filing a financing statement with the Kansas Secretary of State.

**C.     December 17, 2018 Loan**

50.     On or about December 17, 2018, Blue Valley Borrowers executed the promissory note in the original principal sum of $1,768,800 ("12/17/18 Term Note") that accompanies this Complaint as **Exhibit 13**.

51.     In exchange for the 12/17/18 Term Note and as evidenced therein, Bank loaned Blue Valley Borrowers the sum of $1,768,800 ("12/17/18 Term Loan," and together with the 8/25/17 Loans, and the 4/16/18 Loan, the "Blue Valley Borrowers' Loans").

52.     On or about December 17, 2018, the Blue Valley Borrowers executed the business security agreement ("12/17/18 Security Agreement," and together with the 12/17/18 Term Note, the "12/17/18 Loan Documents"), which secures all present and future indebtedness of the Blue Valley Borrowers to Bank, that accompanies this Complaint as **Exhibit 14**.

53.     The 12/17/18 Security Agreement conveyed a security interest in the Blue Valley Borrowers' accounts, instruments, documents, chattel paper, general intangibles, including payment intangibles, contract rights, investment property (including any securities entitlements and/or securities accounts held by the Blue Valley Borrowers), securities and certificates of deposit, deposit accounts and letter of credit rights; inventory; furniture and equipment; and fixtures (the "12/17/18 Collateral").

54.     Bank perfected its security interest in the 12/17/18 Collateral by filing a financing statement with the Kansas Secretary of State.

**D.** **Credit Card**

55.     On or about October 25, 2018, Pinnacle Hospital OP entered into that certain Business Purchasing Card Agreement & Setup form (the "Credit Card Agreement") that accompanies this Complaint as **Exhibit 15**.

56.     In exchange for the Credit Card Agreement and as evidenced therein, Bank extended a credit card account to Pinnacle Hospital OP with a maximum credit limit of $2,000,000.00 (the "Credit Card").

**E.** **Blue Valley Borrowers' Guaranties**

57.     On or about August 25, 2017, Palzer executed the guaranty that accompanies this Complaint as **Exhibit 16**.

58.     On or about October 3, 2018, Palzer, through T. Wells as power of attorney, executed the guaranty that accompanies this Complaint as **Exhibit 17**.

59.     The aforementioned guaranties shall be referred to as the Palzer Blue Valley Guaranties.

60.     In the Palzer Blue Valley Guaranties, Palzer absolutely and unconditionally guaranteed full payment of all indebtedness owed by the Blue Valley Borrowers in connection with the 8/25/17 Loans.

61.     Palzer executed the Palzer Blue Valley Guaranties in exchange for Bank's extension of credit to the Blue Valley Borrowers.

62.     On or about October 3, 2018, Pinnacle Health executed the guaranty (the "Pinnacle Health Blue Valley Guaranty") that accompanies this Complaint as **Exhibit 18**.

63.     In the Pinnacle Health Blue Valley Guaranty, Pinnacle Health absolutely and unconditionally guaranteed full payment of all indebtedness owed by the Blue Valley Borrowers in connection with the 8/25/17 Loans.

11

64.      Pinnacle Health executed the Pinnacle Health Blue Valley Guaranty in exchange for Bank's extension of credit to the Blue Valley Borrowers.

65.      On or about October 3, 2018, Pinnacle Hospital Boonville executed the guaranty (the "Pinnacle Hospital Boonville Blue Valley Guaranty") that accompanies this Complaint as **Exhibit 19**.

66.      In the Pinnacle Hospital Boonville Blue Valley Guaranty, Pinnacle Hospital Boonville absolutely and unconditionally guaranteed full payment of all indebtedness owed by the Blue Valley Borrowers in connection with the 8/25/17 Loans.

67.      Pinnacle Hospital Boonville executed the Pinnacle Health Blue Valley Guaranty in exchange for Bank's extension of credit to the Blue Valley Borrowers.

Pinnacle Health Loan

**A.      October 3, 2018 Loan**

68.      On or about October 3, 2018, Pinnacle Health executed the promissory note in the original principal sum of $6,500,000.00 ("10/3/18 Term Note") that accompanies this Complaint as **Exhibit 20**.

69.      In exchange for the 10/3/18 Term Note and as evidenced therein, Bank loaned Pinnacle Health the sum of $6,500,000 ("10/3/18 Term Loan").

70.      In connection with the 10/3/18 Term Loan, Pinnacle Health executed the loan agreement dated October 3, 2018 (the "10/3/18 Loan Agreement") that accompanies this Complaint as **Exhibit 21.**

71.      On or about October 3, 2018, Pinnacle Hospital Boonville executed the business security agreement ("10/3/18 Security Agreement"), which secures all present and future indebtedness of the Pinnacle Hospital Boonville to Bank, and that accompanies this Complaint as **Exhibit 22**.  The 10/3/18 Security Agreement, the 8/25/17 Security Agreement, the 4/16/18

12

Security Agreement, and the 12/17/18 Security Agreement shall be referred to herein as the "Security Agreements."

72.     The 10/3/18 Security Agreement conveyed a security interest in Pinnacle Hospital Boonville's accounts, instruments, documents, chattel paper, general intangibles, including payment intangibles, contract rights, investment property (including any securities entitlements and/or securities accounts held by Pinnacle Hospital Boonville), securities and certificates of deposit, deposit accounts and letter of credit rights; inventory; furniture and equipment; and fixtures (the "10/3/18 Collateral").

73.     Bank perfected its security interest in the 10/3/18 Collateral by filing a financing statement with the Delaware Secretary of State.

74.     On or about October 3, 2018, Pinnacle Hospital Boonville executed the deed of trust, security agreement, assignment of leases and rents and fixture filing statement (the "Deed of Trust" and together with the 10/3/18 Term Note, the 10/3/18 Loan Agreement, and the 10/3/18 Security Agreement, the "10/3/18 Loan Documents") that accompanies this Complaint as **Exhibit 23**.

75.     The Deed of Trust secures repayment of the Secured Indebtedness (as defined in the Deed of Trust) and conveyed an interest in certain real and personal property described in the Deed of Trust, including certain real property located in Cooper County, Missouri (the "Cooper County Property").

76.     Bank perfected its security interest in the Cooper County Property by recording the Deed of Trust with the Recorder of Deeds for Cooper County, Missouri.

13

**B.     The Pinnacle Health Guaranties**

77.     On or about October 3, 2018, Palzer, through T. Wells as his power of attorney, executed the guaranty (the "Palzer Pinnacle Health Guaranty") that accompanies this Complaint as **Exhibit 24**.

78.     Palzer unconditionally delivered the Palzer Pinnacle Health Guaranty to Bank.

79.     In the Palzer Pinnacle Health Guaranty, Palzer absolutely and unconditionally guaranteed full payment of all indebtedness owed by Pinnacle Health to Bank in connection with the 10/3/18 Term Loan.

80.     Palzer executed the Palzer Pinnacle Health Guaranty in exchange for Bank's extension of credit to Pinnacle Health.

81.     On or about October 3, 2018, Blue Valley Health executed the guaranty (the "Blue Valley Health Guaranty") that accompanies this Complaint as **Exhibit 25**.

82.     Blue Valley Health unconditionally delivered the Blue Valley Health Guaranty to Bank.

83.     In the Blue Valley Health Guaranty, Blue Valley Health absolutely and unconditionally guaranteed the full payment of all indebtedness owed by Pinnacle Health to Bank in connection with the 10/3/18 Term Loan.

84.     Blue Valley Health executed the Blue Valley Health Guaranty in exchange for Bank's extension of credit to Pinnacle Health.

85.     On or about October 3, 2018, Blue Valley Surgical executed the guaranty (the "Blue Valley Surgical Guaranty") that accompanies this Complaint as **Exhibit 26**.

86.     Blue Valley Surgical unconditionally delivered the Blue Valley Surgical Guaranty to Bank.

WA 14122185.1

87.     In the Blue Valley Surgical Guaranty, Blue Valley Surgical absolutely and unconditionally guaranteed the full payment of all indebtedness owed by Pinnacle Health to Bank in connection with the 10/3/18 Term Loan.

88.     Blue Valley Surgical executed the Blue Valley Surgical Guaranty in exchange for Bank's extension of credit to Pinnacle Health.

89.     On or about October 3, 2018, Pinnacle Hospital OP executed the guaranty (the "Pinnacle Hospital OP Guaranty") that accompanies this Complaint as **Exhibit 27**.

90.     Pinnacle Hospital OP unconditionally delivered the Pinnacle Hospital OP to Bank.

91.     In the Pinnacle Hospital OP Guaranty, Pinnacle Hospital OP absolutely and unconditionally guaranteed the full payment of all indebtedness owed by Pinnacle Health to Bank in connection with the 10/3/18 Term Loan.

92.     Pinnacle Hospital OP executed the Pinnacle Hospital OP Guaranty in exchange for Bank's extension of credit to Pinnacle Health.

93.     On or about October 3, 2018, Pinnacle Hospital Boonville executed the guaranty (the "Pinnacle Hospital Boonville Guaranty") that accompanies this Complaint as **Exhibit 28**.

94.     Pinnacle Hospital Boonville unconditionally delivered the Pinnacle Hospital Boonville Guaranty to Bank.

95.     In the Pinnacle Hospital Boonville Guaranty, Pinnacle Hospital Boonville absolutely and unconditionally guaranteed the full payment of all indebtedness owed by Pinnacle Health to Bank in connection with the 10/3/18 Term Loan.

96.     Pinnacle Hospital Boonville executed the Pinnacle Hospital Boonville Guaranty in exchange for Bank's extension of credit to Pinnacle Health.

WA 14122185.1

97.     On or about October 3, 2018, Rojana executed the guaranty (the "Rojana Guaranty") that accompanies this Complaint as **Exhibit 29**.

98.     Rojana unconditionally delivered the Rojana Guaranty to Bank.

99.     In the Rojana Guaranty, Rojana absolutely and unconditionally guaranteed the full payment of all indebtedness owed by Pinnacle Health to Bank in connection with the 10/3/18 Term Loan.

100.    Rojana executed the Rojana Guaranty in exchange for Bank's extension of credit to Pinnacle Health.

101.    On or about October 3, 2018, Joy's executed the guaranty (the "Joy's Guaranty") that accompanies this Complaint as **Exhibit 30**.

102.    Joy's unconditionally delivered the Joy's Guaranty to Bank.

103.    In the Joy's Guaranty, Joy's absolutely and unconditionally guaranteed the full payment of all indebtedness owed by Pinnacle Health to Bank in connection with 10/3/18 Term Loan.

104.    Joy's executed the Joy's Guaranty in exchange for Bank's extension of credit to Pinnacle Health.

<u>Deteriorating Financial Condition and Defaults</u>

**A.      The Health Care Defendants' Decline**

105.    Pinnacle Hospital OP operates a hospital located in Overland Park, Kansas that specializes in bariatric surgery and intervention services.  From 2015 through April 11, 2018, Pinnacle Hospital OP was certified by the Centers for Medicare and Medicaid Services ("CMS") as a hospital provider.

106.    To be classified as a hospital provider under the Medicare and Medicaid programs, a provider must be primarily engaged in providing care to inpatients.  CMS, through

16

the Kansas Department of Health and Environment, surveyed Pinnacle Hospital OP in November 2017.  In February 2018, CMS notified Pinnacle Hospital OP that it did not meet the two-night average length of stay requirement to meet the conditions of participation for hospitals.

107.    On March 27, 2018, CMS sent Pinnacle Hospital OP a notice that CMS was terminating Pinnacle Hospital OP's provider agreement as of April 11, 2018.  As a result of this termination, Pinnacle Hospital OP is precluded from receiving payments under the Medicare and Medicaid programs.

108.    Pinnacle Hospital OP filed suit against CMS and the U.S. Department of Health and Human Services to contest CMS's decision to terminate Pinnacle Hospital OP's provider agreement, but the District of Kansas dismissed the case for lack of subject matter jurisdiction. That decision was affirmed by the Tenth Circuit.

109.    The Health Care Defendants faced another setback in June 2019 when the Blue Valley Borrowers and Pinnacle Hospital Boonville were subject to a ransomware attack which left them unable to process claims for a four week period.

110.    The Health Care Defendants informed Bank that Medicaid also reduced Medicaid reimbursements in 2019 by forty percent for some services, including bariatric services.

111.    Following these setbacks, the Health Care Defendants began to have difficulty paying their vendors.  For instance, according to an accounts payable report submitted by Pinnacle Hospital OP, Blue Valley Surgical, and Pinnacle Hospital Boonville to Bank, as of August 31, 2019, these entities had accounts payable of approximately $10,500,000, of which approximately $7,500,000 were aged over ninety days.

112.    Vendors of the Health Care Defendants also filed collection suits.  On May 5, 2019, Collect RX filed suit against Pinnacle Hospital OP for $410,000 owed for collection

17

services in a case styled *Collect RX v. Pinnacle Regional Hospital Inc. f/k/a Blue Valley Hospital*, 19CV02361 in Johnson County, Kansas. On July 15, 2019, Boyce & Bynum Patholgy Laboratories filed against Pinnacle Hospital Boonville for $92,000 owed for medical laboratory services in a case styled *Boyce & Bynum Pathology Laboratories v. Pinnacle Regional Hospital, LLC*, 19BA-CV02886 in Boone County, Missouri. The filing of these lawsuits constitute events of default under the 8/25/17 Loan Agreement and the 10/3/18 Loan Agreement.

113.    Throughout 2019 and continuing through the present, Defendants also failed to pay Bank, as set forth in more detail below, and Pinnacle Hospital OP became past due on the Credit Card.

114.    Bank met with the Blue Valley Borrowers on or about September 12, 2019 to discuss a plan for repayment of the balance of the Credit Card, which was approximately $1.9 million at that time. Bank and the Blue Valley Borrowers also discussed the upcoming maturity date of the LOC Note, which was set to mature on September 30, 2019.

115.    Bank and the Blue Valley Borrowers discussed the terms of a workout throughout September 2019. On September 30, 2019, counsel for the Blue Valley Borrowers represented to counsel for Bank they agreed to the terms of the workout agreement, including by converting the balance of the Credit Card to a secured note. Based on the Blue Valley Borrowers' and their counsel's representations regarding their agreement to the proposed workout, Bank agreed to extend the maturity date on the LOC from September 30, 2019 to September 30, 2020.

116.    Bank and the Blue Valley Borrowers exchanged draft documents to effectuate the September 30, 2019 agreement. The Blue Valley Borrowers ceased communications by the middle of October 2019, and the Blue Valley Borrowers did not complete the documents necessary to effectuate the work out of the Credit Card.

18

117.    Based on borrowing base certificates submitted on behalf of the Blue Valley Borrowers and Pinnacle Hospital Boonville to Bank, as of June 30, 2019, August 31, 2019, and September 30, 2019, Eligible Accounts declined precipitously from $43,921,922 on June 30, 2019, to $31,978,770 on August 31, 2019, and then to $24,683,883 on September 30, 2019. Due to the Health Care Defendants' failure to submit borrowing base certificates for any months beyond September 30, 2019, Bank has been completely without information as to the state of Eligible Accounts and whether those accounts have continued to decline and whether such decline caused the LOC Note to become overdrawn.

118.    In addition, audited financial statements for the Blue Valley Borrowers and Pinnacle Hospital Boonville for the fiscal year ending December 31, 2018 have not been provided to Bank as required under the 8/25/17 Loan Agreement and the 10/3/18 Loan Agreement due to the Health Care Defendants' inability or unwillingness to allow auditors to complete the work required to generate their work. As a result, Bank is currently without complete visibility into the state of the Health Care Defendants' declining financial condition.

**B.    Failure to Provide Information**

119.    The various loan agreements require that the Health Care Defendants provide financial information to Bank. The Health Care Defendants have failed to satisfy these reporting requirements.

120.    Section 5.3(a) of the 8/25/17 Loan Agreement and the 4/16/18 Loan Agreement require that the Blue Valley Borrowers provide a December 31, 2018 audit within 120 days after fiscal year end. The Blue Valley Borrowers failed to do so.

121.    Section 5.3(b) of the 8/25/17 Loan Agreement requires that the Blue Valley Borrowers provide quarterly financial statements within forty-five days after each fiscal quarter

WA 14122185.1

end.   The Blue Valley Borrowers have not provided quarterly financial statements since the fiscal quarter ending June 30, 2019.

122.    Section 5.3(e) of the 8/25/17 Loan Agreement and Section 5.3(f) the 4/16/18 Loan Agreement require that the Blue Valley Borrowers provide accounts receivable reports within thirty days after each month end. The Blue Valley Borrowers have not provided accounts receivable reports since September 30, 2019.

123.    Section 5.3(f) of the 8/25/17 Loan Agreement requires that the Blue Valley Borrowers provide monthly borrowing base certificates within thirty days after month end. The Blue Valley Borrowers have not provided a borrowing base certificate since the time period ending September 30, 2019.

124.    Section 5.16 of the 8/25/17 Loan Agreement and the 4/16/18 Loan Agreement required the Blue Valley Borrowers to deliver financial projections to Bank.  The Blue Valley Borrowers have failed to do so.

125.    Section 5.3(b) of the 10/3/18 Loan Agreement required Pinnacle Health to provide quarterly financial statements for Pinnacle Hospital Boonville within forty-five days after each quarter end.  Pinnacle Health has not provided quarterly financial statements since June 30, 2019.

126.    Section 5.3(f) of the 10/3/18 Loan Agreement required Pinnacle Health to provide accounts receivable reports within thirty days after each month end.  Pinnacle Health last provided an accounts receivable report that covered the time period ending September 30, 2019.

C.    **Payment Defaults**

127.    In the Blue Valley Borrowers' Loan Documents, the Blue Valley Borrowers agreed to make monthly payments on the Blue Valley Borrowers' Loans.

128.    The Blue Valley Borrowers defaulted under the Blue Valley Borrowers' Loan Documents by failing to make payments when due under the LOC Note, the 5/7 Year Term Note, the 4 Year Term, the 5/8 Year Term Note, the 12/17/18 Term Note, and the 4/16/18 Note.

129.    In the Credit Card Agreement, Pinnacle Hospital OP agreed to pay the unpaid balance of the Credit Card in full on a monthly basis.

130.    Pinnacle Hospital OP defaulted under the Credit Card Agreement by failing to make payments when due under the Credit Card Agreement.

131.    In the Pinnacle Health Loan Documents, Pinnacle Health agreed to make monthly payments on the 10/3/18 Term Loan Note.

132.    Pinnacle Health defaulted under the Pinnacle Health Loan Documents by failing to make payments when due under the 10/3/18 Term Loan Note.

133.    Bank notified the Defendants of this default by a letter dated December 13, 2019 (the "Default Letter") that accompanies this Complaint as **Exhibit 31**.

134.    In the Default Letter, Bank demanded immediate payment of the total past due amount of $2,103,823.17.

135.    The Blue Valley Borrowers, Pinnacle Hospital OP, and Pinnacle Health failed to pay their respective past due amounts or respond in any way to the Default Letter.

136.    On December 26, 2019, Bank sent Defendants the letter (the "Acceleration Letter") that accompanies this Complaint as **Exhibit 32**.

137.    The Acceleration Letter notified Defendants that Bank had accelerated the Loans and demanded immediate repayment of the outstanding indebtedness owed under the Loan Documents.

138.     None of the Defendants paid the Loans following the Acceleration Letter or responded in any way to the Acceleration Letter.

139.     The Acceleration Letter notified Defendants that if the Loans were not paid by January 3, 2020 at 5:00 p.m., the Blue Valley Borrowers' access to the LOC would cease as of January 3, 2020 at 5:00 p.m.

140.     On January 8, 2020, Bank sent Defendants the letter (the "Account Treatment Letter") that accompanies this Complaint as **Exhibit 33**.

141.     On January 8, 2020, Palzer attempted to close the Pinnacle Hospital OP, Pinnacle Hospital Boonville, and Blue Valley Surgical deposit accounts.  Bank declined to close the accounts.

142.     The Account Treatment Letter notified Defendants that all future deposits in the Pinnacle Hospital OP, Pinnacle Hospital Boonville, or Blue Valley Surgical deposit accounts would be applied to the indebtedness owed to Bank.  Bank received no response to the Account Treatment Letter until January 13, 2020 when the Defendants' counsel advised Bank's counsel that they would be unable to make payroll of approximately $1.1 million on January 15, 2020.

143.     On January 10, 2020, Bank sent Defendants the letter (the "Collateral Assembly Letter") that accompanies this Complaint as **Exhibit 34**.

144.     None of the Defendants assembled the collateral as demanded following the Collateral Assembly Letter, or responded in any way to the Collateral Assembly Letter.

WA 14122185.1

145.    As of January 15, 2019, the debt owed by Defendants to Bank under the Loans is:

| Note/Account | Principal | Unpaid Interest | Late Fees | Total |
|---|---|---|---|---|
| LOC Note | $11,090,828.05 | $124,991.73 | $3,697.45 | $11,219,517.23 |
| 5/7 Year Term Note | $1,481,778.97 | $13,336.01 | $1,876.38 | $1,496,991.36 |
| 4 Year Term Note | $100,932.84 | $878.11 | $478.06 | $102,289.01 |
| 5/8 Year Term Note | $1,055,339.80 | $9,498.05 | $1,718.66 | $1,066,556.51 |
| 12/17/18 Term Note | $1,592,455.65 | $20,115.81 | $50.00 | $1,612,621.46 |
| 4/16/18 Term Note | $542,978.81 | $6,176.38 | $50.00 | $549,205.19 |
| 10/3/18 Term Note | $6,222,998.59 | $94,866.15 | $8,058.51 | $6,325,923.25 |
|  | Outstanding Charges and Interest |  |  |  |
| Business Purchasing Card | $1,968,783.03 |  |  | $1,968,783.03 |
|  |  |  |  |  |
|  |  |  | **Total Indebtedness:** | **$24,341,887.04** |

146.    Bank has reasonably incurred, and is continuing to incur, expenses for legal services to protect its interests relating to the Loans.  Additionally, interest shall continue to accrue on the unpaid principal balances of the Loans until the unpaid principal balances are fully repaid.  In addition to accrued interest, Defendants are liable for all other obligations under the Loans including, without limitation, any amounts that are due or may become due and owing under the Loans, including default interest, late fees, legal fees and expenses, and court costs.

147.    Bank incorporates by reference the contents of each exhibit to this Complaint as though those exhibits were set forth fully in this Complaint.

## COUNT I: BREACH OF LOC NOTE
### (BLUE VALLEY BORROWERS)

148.    Bank incorporates by reference the preceding paragraphs of this Complaint.

149.    The LOC Note is a valid, enforceable contract.

150.    Bank performed or tendered its performance of its obligations under the LOC Note, including by extending the LOC to the Blue Valley Borrowers.

WA 14122185.1

151.    The LOC Note provides that upon default Bank may declare the entire unpaid principal balance under the LOC Note and all accrued unpaid interest immediately due and requires that the Blue Valley Borrowers pay such amount.

152.    The Blue Valley Borrowers are in default under the LOC Note. Accordingly, on December 26, 2019, Bank accelerated the balance due under the LOC Note and made demand for immediate payment.   The Blue Valley Borrowers materially breached the LOC Note by failing and refusing to pay the balance on the LOC when due.

153.    As of January 15, 2020, the Blue Valley Borrowers were indebted to Bank under the LOC Note for the principal sum of $11,090,828.05, for accrued interest in the amount of $124,991.73, plus interest thereafter until paid, at the default rate, and subject to change as provided in the LOC Note, for late fees of $3,697.45.  In addition, under the terms of the 8/25/17 Loan Documents, Bank is also entitled to recover other fees and costs of collection, including late fees and attorneys' fees.

154.    As a result of the Blue Valley Borrowers' material breaches of the LOC Note, Bank suffered damages, including the loss of the principal that it lent in exchange for that agreement, interest on that money, and expenses that Bank incurred to recover those amounts.

155.    Bank has met all conditions precedent under the LOC Note.

WHEREFORE, Bank asks the Court to enter judgment in its favor against the Blue Valley Borrowers, jointly and severally, for (a) $11,219,517.23; (b) interest that accrues on the principal balance of the LOC after January 15, 2020; (c) expenses including, without limitation, reasonable attorneys' fees and expenses, relating to the LOC that Bank has incurred and will incur to protect or enforce its rights relating to the LOC; and (d) pre-judgment interest and post-judgment interest as permitted by law, as well as any other relief that the Court deems just.

WA 14122185.1

## COUNT II: BREACH OF 5/7 YEAR TERM NOTE
## (BLUE VALLEY BORROWERS)

156.    Bank incorporates by reference the preceding paragraphs of this Complaint.

157.    The 5/7 Year Term Note is a valid, enforceable contract.

158.    Bank performed or tendered its performance of its obligations under the 5/7 Year Term Note, including by making the 5/7 Year Term Loan to the Blue Valley Borrowers.

159.    The 5/7 Year Term Note provides that upon default Bank may declare the entire unpaid principal balance under the 5/7 Year Term Note and all accrued unpaid interest immediately due and requires that Blue Valley Borrowers pay such amount.

160.    The Blue Valley Borrowers are in default under the 5/7 Year Term Note. Accordingly, on December 26, 2019, Bank accelerated the balance due under the 5/7 Year Term Note and made demand for immediate payment.   The Blue Valley Borrowers materially breached the 5/7 Year Term Note by failing and refusing to pay the balance on the 5/7 Year Term Loan when due.

161.    As of January 15, 2020, the Blue Valley Borrowers were indebted to Bank under the 5/7 Year Term Note for the principal sum of $1,481,788.97, for accrued interest in the amount of $13,336.01, plus interest thereafter until paid, at the default rate, and subject to change as provided in the 5/7 Year Term Note, and late fees of $1,876.38.   In addition, under the terms of the 8/25/17 Loan Documents, Bank is also entitled to recover other fees and costs of collection, including attorneys' fees.

162.    As a result of the Blue Valley Borrowers' material breaches of the 5/7 Year Term Note, Bank suffered damages, including the loss of the principal that it lent in exchange for that agreement, interest on that money, and expenses that Bank incurred to recover those amounts.

163.    Bank has met all conditions precedent under the 5/7 Year Term Note.

WA 14122185.1

WHEREFORE, Bank asks the Court to enter judgment in its favor against the Blue Valley Borrowers, jointly and severally, for (a) $1,496,991.36; (b) interest that accrues on the principal balance of the 5/7 Year Term Loan after January 15, 2020; (c) expenses including, without limitation, reasonable attorneys' fees and expenses, relating to the 5/7 Year Term Loan that Bank has incurred and will incur to protect or enforce its rights relating to the 5/7 Year Term Loan; and (d) pre-judgment interest and post-judgment interest as permitted by law, as well as any other relief that the Court deems just.

### COUNT III: BREACH OF 4 YEAR TERM NOTE
### (BLUE VALLEY BORROWERS)

164.    Bank incorporates by reference the preceding paragraphs of this Complaint.

165.    The 4 Year Term Note is a valid, enforceable contract.

166.    Bank performed or tendered its performance of its obligations under the 4 Year Term Note, including by making the 4 Year Term Loan to the Blue Valley Borrowers.

167.    The 4 Year Term Note provides that upon default Bank may declare the entire unpaid principal balance under the 4 Year Term Note and all accrued unpaid interest immediately due and requires that Blue Valley Borrowers pay such amount.

168.    The Blue Valley Borrowers are in default under the 4 Year Term Note. Accordingly, on December 26, 2019, Bank accelerated the balance due under the 4 Year Term Note and made demand for immediate payment. The Blue Valley Borrowers materially breached the 4 Year Term Note by failing and refusing to pay the balance on the 4 Year Term Loan when due.

169.    As of January 15, 2020, the Blue Valley Borrowers were indebted to Bank under the 4 Year Term Note for the principal sum of $100,932.84, for accrued interest in the amount of $878.11, plus interest thereafter until paid, at the default rate, and subject to change as provided

in the 4 Year Term Note, and $478.06 in late fees. In addition, under the terms of the 8/25/17

Loan Documents, Bank is also entitled to recover other fees and costs of collection, including

late fees and attorneys' fees.

170.    As a result of the Blue Valley Borrowers' material breaches of the 4 Year Term

Note, Bank suffered damages, including the loss of the principal that it lent in exchange for that

agreement, interest on that money, and expenses that Bank incurred to recover those amounts.

171.    Bank has met all conditions precedent under the 4 Year Term Note.

WHEREFORE, Bank asks the Court to enter judgment in its favor against the Blue

Valley Borrowers, jointly and severally, for (a) $102,289.01; (b) interest that accrues on the

principal balance of the 4 Year Term Loan after January 15, 2020; (c) expenses including,

without limitation, reasonable attorneys' fees and expenses, relating to the 4 Year Term Loan

that Bank has incurred and will incur to protect or enforce its rights relating to the 4 Year Term

Loan; and (d) pre-judgment interest and post-judgment interest as permitted by law, as well as

any other relief that the Court deems just.

### COUNT IV: BREACH OF 5/8 TERM NOTE
### (BLUE VALLEY BORROWERS)

172.    Bank incorporates by reference the preceding paragraphs of this Complaint.

173.    The 5/8 Year Term Note is a valid, enforceable contract.

174.    Bank performed or tendered its performance of its obligations under the 5/8 Year

Term Note, including by making the 5/8 Year Term Loan to the Blue Valley Borrowers.

175.    The 5/8 Year Term Note provides that upon default Bank may declare the entire

unpaid principal balance under the 5/8 Year Term Note and all accrued unpaid interest

immediately due and requires that Blue Valley Borrowers pay such amount.

27

176.    The Blue Valley Borrowers are in default under the 5/8 Year Term Note. Accordingly, on December 26, 2019, Bank accelerated the balance due under the 5/8 Year Term Note and made demand for immediate payment. The Blue Valley Borrowers materially breached the 5/8 Year Term Note by failing and refusing to pay the balance on the 5/8 Year Term Loan when due.

177.    As of January 15, 2020, the Blue Valley Borrowers were indebted to Bank under the 5/8 Year Term Note for the principal sum of $1,055,399.80, for accrued interest in the amount of $9,498.05, plus interest thereafter until paid, at the default rate, and subject to change as provided in the 5/8 Year Term Note, and $1,718.66 in late fees. In addition, under the terms of the 8/25/17 Loan Documents, Bank is also entitled to recover other fees and costs of collection, including late fees and attorneys' fees.

178.    As a result of the Blue Valley Borrowers' material breaches of the 5/8 Year Term Note, Bank suffered damages, including the loss of the principal that it lent in exchange for that agreement, interest on that money, and expenses that Bank incurred to recover those amounts.

179.    Bank has met all conditions precedent under the 5/8 Year Term Note.

WHEREFORE, Bank asks the Court to enter judgment in its favor against the Blue Valley Borrowers, jointly and severally, for (a) $1,066,556.51; (b) interest that accrues on the principal balance of the 5/8 Year Term Loan after January 15, 2020; (c) expenses including, without limitation, reasonable attorneys' fees and expenses, relating to the 5/8 Year Term Loan that Bank has incurred and will incur to protect or enforce its rights relating to the 5/8 Year Term Loan; and (d) pre-judgment interest and post-judgment interest as permitted by law, as well as any other relief that the Court deems just.

WA 14122185.1

## COUNT V: BREACH OF GUARANTIES
## (DOUGLAS C. PALZER)

180.     Bank incorporates by reference the preceding paragraphs of this Complaint.

181.     Palzer gave the Palzer Blue Valley Guaranties to induce Bank to make the 8/25/17 Loans to the Blue Valley Borrowers.

182.     Palzer gave the Palzer Blue Valley Guaranties in exchange for the 8/25/17 Loans Bank made to the Blue Valley Borrowers.

183.     In the Palzer Blue Valley Guaranties, Palzer absolutely and unconditionally guaranteed the payment and performance of the Blue Valley Borrowers' obligations under the 8/25/17 Loan Documents to Bank.

184.     Palzer unconditionally delivered the Palzer Blue Valley Guaranties to Bank.

185.     Relying on the Palzer Blue Valley Guaranties, Bank made the 8/25/17 Loans to the Blue Valley Borrowers as reflected in the 8/25/17 Loan Documents.

186.     Palzer did not make payments on the 8/25/17 Loans after the Blue Valley Borrowers' default or upon Bank's acceleration and demand for immediate payment.

187.     By failing to make payments on the 8/25/17 Loans when the Blue Valley Borrowers failed to do so, Palzer materially breached the Palzer Blue Valley Guaranties.

188.     As a result of those material breaches of the Palzer Blue Valley Guaranties, Bank suffered damages, including the loss of the principal that it lent, interest on that money, and expenses that Bank incurred to recover those amounts.

189.     Bank has met all conditions precedent under the Palzer Blue Valley Guaranties.

WHEREFORE, Bank asks the Court to enter judgment in its favor against Palzer, for (a) $13,885,354.11; (b) interest that accrues on the principal balances of the 8/25/17 Loans after January 15, 2020; (c) expenses including, without limitation, reasonable attorneys' fees and

WA 14122185.1

expenses, relating to the 8/25/17 Loans that Bank has incurred and will incur to protect or enforce its rights relating to the 8/25/17 Loans; (d) any other amounts that the Blue Valley Borrowers are obligated to pay Bank under the 8/25/17 Loan Documents; and (e) pre-judgment interest and post-judgment interest as permitted by law, as well as any other relief that the Court deems just.

**COUNT VI: BREACH OF GUARANTY**
**(PINNACLE HEALTH)**

190.    Bank incorporates by reference the preceding paragraphs of this Complaint.

191.    Pinnacle Health gave the Pinnacle Health Blue Valley Guaranty to induce Bank to increase, extend, and/or modify the 8/25/17 Loans to the Blue Valley Borrowers.

192.    Pinnacle Health gave the Pinnacle Health Blue Valley Guaranty in exchange for an increase, extension, and/or modification of the 8/25/17 Loans that Bank made to the Blue Valley Borrowers.

193.    In the Pinnacle Health Blue Valley Guaranty, Pinnacle Health absolutely and unconditionally guaranteed the payment and performance of the Blue Valley Borrowers' obligations under the 8/25/17 Loan Documents to Bank.

194.    Pinnacle Health unconditionally delivered the Pinnacle Health Blue Valley Guaranty to Bank.

195.    Relying on the Pinnacle Health Blue Valley Guaranty, Bank increased, extended, and/or modified the 8/25/17 Loans to the Blue Valley Borrowers as reflected in the 8/25/17 Loan Documents.

196.    Pinnacle Health did not make payments on the 8/25/17 Loans after the Blue Valley Borrowers' default or upon Bank's acceleration and demand for immediate payment.

197.    By failing to make payments on the 8/25/17 Loans when the Blue Valley Borrowers failed to do so, Pinnacle Health materially breached the Pinnacle Health Blue Valley Guaranty.

198.    As a result of those material breaches of the Pinnacle Health Blue Valley Guaranty, Bank suffered damages, including the loss of the principal that it lent, interest on that money, and expenses that Bank incurred to recover those amounts.

199.    Bank has met all conditions precedent under the Pinnacle Health Blue Valley Guaranty.

WHEREFORE, Bank asks the Court to enter judgment in its favor against Pinnacle Health for (a) $13,885,354.11; (b) interest that accrues on the principal balances of the 8/25/17 Loans after January 15, 2020; (c) expenses including, without limitation, reasonable attorneys' fees and expenses, relating to the 8/25/17 Loans that Bank has incurred and will incur to protect or enforce its rights relating to the 8/25/17 Loans; (d) any other amounts that the Blue Valley Borrowers are obligated to pay Bank under the 8/25/17 Loan Documents; and (e) pre-judgment interest and post-judgment interest as permitted by law, as well as any other relief that the Court deems just.

### COUNT VII: BREACH OF GUARANTY
### (PINNACLE HOSPITAL BOONVILLE)

200.    Bank incorporates by reference the preceding paragraphs of this Complaint.

201.    Pinnacle Hospital Boonville gave the Pinnacle Hospital Boonville Blue Valley Guaranty to induce Bank to increase, extend, or modify the 8/25/17 Loans to the Blue Valley Borrowers.

WA 14122185.1

202.    Pinnacle Hospital Boonville gave the Pinnacle Hospital Boonville Blue Valley Guaranty in exchange for the increase, extension, or modification of the 8/25/17 Loans that Bank made to the Blue Valley Borrowers.

203.    In the Pinnacle Hospital Boonville Blue Valley Guaranty, Pinnacle Hospital Boonville absolutely and unconditionally guaranteed the payment and performance of the Blue Valley Borrowers' obligations under the 8/25/17 Loan Documents to Bank.

204.    Pinnacle Hospital Boonville unconditionally delivered the Pinnacle Hospital Boonville Blue Valley Guaranty to Bank.

205.    Relying on the Pinnacle Hospital Boonville Blue Valley Guaranty, Bank increased, extended, and/or modified the 8/25/17 Loans to the Blue Valley Borrowers as reflected in the 8/25/17 Loan Documents.

206.    Pinnacle Hospital Boonville did not make payments on the 8/25/17 Loans after the Blue Valley Borrowers' default or upon Bank's acceleration and demand for immediate payment.

207.    By failing to make payments on the 8/25/17 Loans when the Blue Valley Borrowers failed to do so, Pinnacle Hospital Boonville materially breached the Pinnacle Hospital Boonville Blue Valley Guaranty.

208.    As a result of those material breaches of the Pinnacle Hospital Boonville Blue Valley Guaranty, Bank suffered damages, including the loss of the principal that it lent, interest on that money, and expenses that Bank incurred to recover those amounts.

209.    Bank has met all conditions precedent under the Pinnacle Hospital Boonville Blue Valley Guaranty.

WA 14122185.1

WHEREFORE, Bank asks the Court to enter judgment in its favor against Pinnacle Hospital Boonville for (a) $13,885,354.11; (b) interest that accrues on the principal balances of the 8/25/17 Loans after January 15, 2020; (c) expenses including, without limitation, reasonable attorneys' fees and expenses, relating to the 8/25/17 Loans that Bank has incurred and will incur to protect or enforce its rights relating to the 8/25/17 Loans; (d) any other amounts that the Blue Valley Borrowers are obligated to pay Bank under the 8/25/17 Loan Documents; and (e) pre-judgment interest and post-judgment interest as permitted by law, as well as any other relief that the Court deems just.

## COUNT VIII: BREACH OF 12/17/18 TERM NOTE
### (BLUE VALLEY BORROWERS)

210.    Bank incorporates by reference the preceding paragraphs of this Complaint.

211.    The 12/17/18 Term Note is a valid, enforceable contract.

212.    Bank performed or tendered its performance of its obligations under the 12/17/18 Term Note, including by making the 12/17/18 Term Loan to the Blue Valley Borrowers.

213.    The 12/17/18 Term Note provides that upon default Bank may declare the entire unpaid principal balance under the 12/17/18 Term Note and all accrued unpaid interest immediately due and requires that Blue Valley Borrowers pay such amount.

214.    The Blue Valley Borrowers are in default under the 12/17/18 Term Note. Accordingly, on December 26, 2019, Bank accelerated the balance due under the 12/17/18 Term Note and made demand for immediate payment.  The Blue Valley Borrowers materially breached the 12/17/18 Term Note by failing and refusing to pay the balance on the 12/17/18 Term Note when due.

215.    As of January 15, 2020, the Blue Valley Borrowers were indebted to Bank under the 12/17/18 Term Note for the principal sum of $1,592,455.65, for accrued interest in the

33

amount of $20,115.81, plus interest thereafter until paid, at the default rate, and subject to change as provided in the 12/17/18 Term Note, and $50.00 in late fees. In addition, under the terms of the 12/17/18 Loan Documents, Bank is also entitled to recover other fees and costs of collection, including late fees and attorneys' fees.

216.    As a result of the Blue Valley Borrowers' material breaches of the 12/17/18 Term Note, Bank suffered damages, including the loss of the principal that it lent in exchange for that agreement, interest on that money, and expenses that Bank incurred to recover those amounts.

217.    Bank has met all conditions precedent under the 12/17/18 Term Note.

WHEREFORE, Bank asks the Court to enter judgment in its favor against the Blue Valley Borrowers, jointly and severally, for (a) $1,612,621.46; (b) interest that accrues on the principal balance of the 12/17/18 Term Loan after January 15, 2020; (c) expenses including, without limitation, reasonable attorneys' fees and expenses, relating to the 12/17/18 Term Loan that Bank has incurred and will incur to protect or enforce its rights relating to the 12/17/18 Term Loan; and (d) pre-judgment interest and post-judgment interest as permitted by law, as well as any other relief that the Court deems just.

### COUNT IX: BREACH OF 4/16/18 TERM NOTE
### (BLUE VALLEY BORROWERS)

218.    Bank incorporates by reference the preceding paragraphs of this Complaint.

219.    The 4/16/18 Term Note is a valid, enforceable contract.

220.    Bank performed or tendered its performance of its obligations under the 4/16/18 Term Note, including by making the 4/16/18 Term Loan to the Blue Valley Borrowers.

221.    The 4/16/18 Term Note provides that upon default that Bank may declare the entire unpaid principal balance under the 4/16/18 Term Note and all accrued unpaid interest immediately due and requires that Blue Valley Borrowers pay such amount.

WA 14122185.1

222.    The Blue Valley Borrowers are in default under the 4/16/18 Term Note. Accordingly, on December 26, 2019, Bank accelerated the balance due under the 4/16/18 Term Note and made demand for immediate payment.   The Blue Valley Borrowers materially breached the 4/16/18 Term Note by failing and refusing to pay the balance on the 4/16/18 Term Loan when due.

223.    As of January 15, 2020, the Blue Valley Borrowers were indebted to Bank under the 4/16/18 Term Note for the principal sum of $542,978.81, for accrued interest in the amount of $6,176.38, plus interest thereafter until paid, at the default rate, and subject to change as provided in the 4/16/18 Term Note, and $50.00 in late fees. In addition, under the terms of the 4/16/18 Loan Documents, Bank is also entitled to recover other fees and costs of collection, including late fees and attorneys' fees.

224.    As a result of the Blue Valley Borrowers' material breaches of the 4/16/18 Term Note, Bank suffered damages, including the loss of the principal that it lent in exchange for that agreement, interest on that money, and expenses that Bank incurred to recover those amounts.

225.    Bank has met all conditions precedent under the 4/16/18 Term Note.

WHEREFORE, Bank asks the Court to enter judgment in its favor against the Blue Valley Borrowers, jointly and severally, for (a) $549,205.19; (b) interest that accrues on the principal balance of the 4/16/18 Term Loan after January 15, 2020; (c) expenses including, without limitation, reasonable attorneys' fees and expenses, relating to the 4/16/18 Term Loan that Bank has incurred and will incur to protect or enforce its rights relating to the 4/16/18 Term Loan; and (d) pre-judgment interest and post-judgment interest as permitted by law, as well as any other relief that the Court deems just.

WA 14122185.1

## COUNT X: BREACH OF 10/3/18 TERM NOTE
### (PINNACLE HEALTH)

226.    Bank incorporates by reference the preceding paragraphs of this Complaint.

227.    The 10/3/18 Term Note is a valid, enforceable contract.

228.    Bank performed or tendered its performance of its obligations under the 10/3/18 Term Note, including by making the 10/3/18 Term Loan to Pinnacle Health.

229.    The 10/3/18 Term Note provides that upon default that Bank may declare the entire unpaid principal balance under the 10/3/18 Term Note and all accrued unpaid interest immediately due and requires that Pinnacle Health pay such amount.

230.    Pinnacle Health is in default under the 10/3/18 Term Note. Accordingly, on December 26, 2019, Bank accelerated the balance due under the 10/3/18 Term Note and made demand for immediate payment. Pinnacle Health materially breached the 10/3/18 Term Note by failing and refusing to pay the balance on the 10/3/18 Term Loan when due.

231.    As of January 15, 2020, Pinnacle Health was indebted to Bank under the 10/3/18 Term Note for the principal sum of $6,222,998.59, for accrued interest in the amount of $94,866.15, plus interest thereafter until paid, at the default rate, and subject to change as provided in the 10/3/18 Term Note, and $8,058.51 in late fees. In addition, under the terms of the 10/3/18 Loan Documents, Bank is also entitled to recover other fees and costs of collection, including late fees and attorneys' fees.

232.    As a result of Pinnacle Health's material breaches of the 10/3/18 Term Note, Bank suffered damages, including the loss of the principal that it lent in exchange for that agreement, interest on that money, and expenses that Bank incurred to recover those amounts.

233.    Bank has met all conditions precedent under the 10/3/18 Term Note.

WA 14122185.1

WHEREFORE, Bank asks the Court to enter judgment in its favor against Pinnacle Health for (a) $6,325,923.25; (b) interest that accrues on the principal balance of the 10/3/18 Term Loan after January 15, 2020; (c) expenses including, without limitation, reasonable attorneys' fees and expenses, relating to the 10/3/18 Term Loan that Bank has incurred and will incur to protect or enforce its rights relating to the 10/3/18 Term Loan; and (d) pre-judgment interest and post-judgment interest as permitted by law, as well as any other relief that the Court deems just.

## COUNT XI: BREACH OF GUARANTY
### (BLUE VALLEY HEALTH)

234.    Bank incorporates by reference the preceding paragraphs of this Complaint.

235.    Blue Valley Health gave the Blue Valley Health Guaranty to induce Bank to make the 10/3/18 Term Loan to Pinnacle Health.

236.    Blue Valley Health gave the Blue Valley Health Guaranty in exchange for the 10/3/18 Term Loan Bank made to Pinnacle Health.

237.    In the Blue Valley Health Guaranty, Blue Valley Health absolutely and unconditionally guaranteed the payment and performance of the Pinnacle Health obligations to Bank.

238.    Blue Valley Health unconditionally delivered the Blue Valley Health Guaranty to Bank.

239.    Relying on the Blue Valley Health Guaranty, Bank made the 10/3/18 Term Loan to Pinnacle Health as reflected in the 10/3/18 Term Note.

240.    Blue Valley Health did not make payments on the 10/3/18 Term Loan after Pinnacle Health's default or upon Bank's acceleration and demand for immediate payment.

WA 14122185.1

241.    By failing to make payments on the 10/3/18 Term Loan when Pinnacle Health failed to do so, Blue Valley Health materially breached the Blue Valley Health Guaranty.

242.    As a result of those material breaches of the Blue Valley Health Guaranty, Bank suffered damages, including the loss of the principal that it lent, interest on that money, and expenses that Bank incurred to recover those amounts.

243.    Bank has met all conditions precedent under the Blue Valley Health Guaranty.

WHEREFORE, Bank asks the Court to enter judgment in its favor against Blue Valley Health for (a) $6,325,923.25; (b) interest that accrues on the principal balances of 10/3/18 Term Loan after January 15, 2020; (c) expenses including, without limitation, reasonable attorneys' fees and expenses, relating to the 10/3/18 Term Loan that Bank has incurred and will incur to protect or enforce its rights relating to the 10/3/18 Term Loan; (d) any other amounts that Pinnacle Health is obligated to pay Bank under the 10/3/18 Loan Documents; and (e) pre-judgment interest and post-judgment interest as permitted by law, as well as any other relief that the Court deems just.

## COUNT XII: BREACH OF GUARANTY
### (BLUE VALLEY SURGICAL)

244.    Bank incorporates by reference the preceding paragraphs of this Complaint.

245.    Blue Valley Surgical gave the Blue Valley Surgical Guaranty to induce Bank to make the 10/3/18 Term Loan to Pinnacle Health.

246.    Blue Valley Surgical gave the Blue Valley Surgical Guaranty in exchange for the 10/3/18 Term Loan Bank made to Pinnacle Health.

247.    In the Blue Valley Surgical Guaranty, Blue Valley Surgical absolutely and unconditionally guaranteed the payment and performance of the Pinnacle Health obligations to Bank.

38

248.    Blue Valley Surgical unconditionally delivered the Blue Valley Surgical Guaranty to Bank.

249.    Relying on the Blue Valley Surgical Guaranty, Bank made the 10/3/18 Term Loan to Pinnacle Health as reflected in the 10/3/18 Term Note.

250.    Blue Valley Surgical did not make payments on the 10/3/18 Term Loan after Pinnacle Health's default or upon Bank's acceleration and demand for immediate payment.

251.    By failing to make payments on the 10/3/18 Term Loan when Pinnacle Health failed to do so, Blue Valley Surgical materially breached the Blue Valley Surgical Guaranty.

252.    As a result of those material breaches of the Blue Valley Surgical Guaranty, Bank suffered damages, including the loss of the principal that it lent, interest on that money, and expenses that Bank incurred to recover those amounts.

253.    Bank has met all conditions precedent under the Blue Valley Surgical Guaranty.

WHEREFORE, Bank asks the Court to enter judgment in its favor against Blue Valley Surgical for (a) $6,325,923.25; (b) interest that accrues on the principal balances of 10/3/18 Term Loan after January 15, 2020; (c) expenses including, without limitation, reasonable attorneys' fees and expenses, relating to the 10/3/18 Term Loan that Bank has incurred and will incur to protect or enforce its rights relating to the 10/3/18 Term Loan; (d) any other amounts that Pinnacle Health is obligated to pay Bank under the 10/3/18 Loan Documents; and (e) pre-judgment interest and post-judgment interest as permitted by law, as well as any other relief that the Court deems just.

## COUNT XIII: BREACH OF GUARANTY
## (PINNACLE HOSPITAL BOONVILLE)

254.    Bank incorporates by reference the preceding paragraphs of this Complaint.

39

255.     Pinnacle Hospital Boonville gave the Pinnacle Hospital Boonville Guaranty to induce Bank to make the 10/3/18 Term Loan to Pinnacle Health.

256.     Pinnacle Hospital Boonville gave the Pinnacle Hospital Boonville Guaranty in exchange for the 10/3/18 Term Loan Bank made to Pinnacle Health.

257.     In the Pinnacle Hospital Boonville Guaranty, Pinnacle Hospital Boonville absolutely and unconditionally guaranteed the payment and performance of the Pinnacle Health obligations to Bank.

258.     Pinnacle Hospital Boonville unconditionally delivered the Pinnacle Hospital Boonville Guaranty to Bank.

259.     Relying on the Pinnacle Hospital Boonville Guaranty, Bank made the 10/3/18 Term Loan to Pinnacle Health as reflected in the 10/3/18 Term Note.

260.     Pinnacle Hospital Boonville did not make payments on the 10/3/18 Term Loan after Pinnacle Health's default or upon Bank's acceleration and demand for immediate payment.

261.     By failing to make payments on the 10/3/18 Term Loan when Pinnacle Health failed to do so, Pinnacle Hospital Boonville materially breached the Pinnacle Hospital Boonville Guaranty.

262.     As a result of those material breaches of the Pinnacle Hospital Boonville Guaranty, Bank suffered damages, including the loss of the principal that it lent, interest on that money, and expenses that Bank incurred to recover those amounts.

263.     Bank has met all conditions precedent under the Pinnacle Hospital Boonville Guaranty.

WHEREFORE, Bank asks the Court to enter judgment in its favor against Pinnacle Hospital Boonville for (a) $6,325,923.25; (b) interest that accrues on the principal balances of

10/3/18 Term Loan after January 15, 2020; (c) expenses including, without limitation, reasonable attorneys' fees and expenses, relating to the 10/3/18 Term Loan that Bank has incurred and will incur to protect or enforce its rights relating to the 10/3/18 Term Loan; (d) any other amounts that Pinnacle Health is obligated to pay Bank under the 10/3/18 Term Documents; and (e) pre-judgment interest and post-judgment interest as permitted by law, as well as any other relief that the Court deems just.

## COUNT XIV: BREACH OF GUARANTY
## (DOUGLAS C. PALZER)

264.    Bank incorporates by reference the preceding paragraphs of this Complaint.

265.    Palzer gave the Palzer Pinnacle Health Guaranty to induce Bank to make the 10/3/18 Term Loan to Pinnacle Health.

266.    Palzer gave the Palzer Pinnacle Health Guaranty in exchange for the 10/3/18 Term Loan Bank made to Pinnacle Health.

267.    In the Palzer Pinnacle Health Guaranty, Palzer absolutely and unconditionally guaranteed the payment and performance of the Pinnacle Health obligations to Bank.

268.    Palzer unconditionally delivered the Palzer Pinnacle Health Guaranty to Bank.

269.    Relying on the Palzer Pinnacle Health Guaranty, Bank made the 10/3/18 Term Loan to Pinnacle Health as reflected in the 10/3/18 Term Note.

270.    Palzer did not make payments on the 10/3/18 Term Loan after Pinnacle Health's default or upon Bank's acceleration and demand for immediate payment.

271.    By failing to make payments on the 10/3/18 Term Loan when Pinnacle Health failed to do so, Palzer materially breached the Palzer Pinnacle Health Guaranty.

41

272.    As a result of those material breaches of the Palzer Pinnacle Health Guaranty, Bank suffered damages, including the loss of the principal that it lent, interest on that money, and expenses that Bank incurred to recover those amounts.

273.    Bank has met all conditions precedent under the Palzer Pinnacle Health Guaranty.

WHEREFORE, Bank asks the Court to enter judgment in its favor against Palzer for (a) $6,325,923.25; (b) interest that accrues on the principal balances of 10/3/18 Term Loan after January 15, 2020; (c) expenses including, without limitation, reasonable attorneys' fees and expenses, relating to the 10/3/18 Term Loan that Bank has incurred and will incur to protect or enforce its rights relating to the 10/3/18 Term Loan; (d) any other amounts that Pinnacle Health is obligated to pay Bank under the 10/3/18 Loan Documents; and (e) pre-judgment interest and post-judgment interest as permitted by law, as well as any other relief that the Court deems just.

## COUNT XV: BREACH OF GUARANTY
### (PINNACLE HOSPITAL OP)

274.    Bank incorporates by reference the preceding paragraphs of this Complaint.

275.    Pinnacle Hospital OP gave the Pinnacle Hospital OP Guaranty to induce Bank to make the 10/3/18 Term Loan to Pinnacle Health.

276.    Pinnacle Hospital OP gave the Pinnacle Hospital OP Guaranty in exchange for the 10/3/18 Term Loan Bank made to Pinnacle Health.

277.    In the Pinnacle Hospital OP Guaranty, Pinnacle Hospital OP absolutely and unconditionally guaranteed the payment and performance of the Pinnacle Health obligations to Bank.

278.    Pinnacle Hospital OP unconditionally delivered the Pinnacle Hospital OP Guaranty to Bank.

42

279.    Relying on the Pinnacle Hospital OP Guaranty, Bank made the 10/3/18 Term Loan to Pinnacle Health as reflected in the 10/3/18 Term Note.

280.    Pinnacle Hospital OP did not make payments on the 10/3/18 Term Loan after Pinnacle Health's default or upon Bank's acceleration and demand for immediate payment.

281.    By failing to make payments on the 10/3/18 Term Loan when Pinnacle Health failed to do so, Pinnacle Hospital OP materially breached the Pinnacle Hospital OP Guaranty.

282.    As a result of those material breaches of the Pinnacle Hospital OP Guaranty, Bank suffered damages, including the loss of the principal that it lent, interest on that money, and expenses that Bank incurred to recover those amounts.

283.    Bank has met all conditions precedent under the Pinnacle Hospital OP Guaranty.

WHEREFORE, Bank asks the Court to enter judgment in its favor against Pinnacle Hospital OP for (a) $6,325,923.25; (b) interest that accrues on the principal balances of 10/3/18 Term Loan after January 15, 2020; (c) expenses including, without limitation, reasonable attorneys' fees and expenses, relating to the 10/3/18 Term Loan that Bank has incurred and will incur to protect or enforce its rights relating to the 10/3/18 Term Loan; (d) any other amounts that Pinnacle Health is obligated to pay Bank under the 10/3/18 Loan Documents; and (e) pre-judgment interest and post-judgment interest as permitted by law, as well as any other relief that the Court deems just.

## COUNT XVI: BREACH OF GUARANTY
### (JOY'S)

284.    Bank incorporates by reference the preceding paragraphs of this Complaint.

285.    Joy's gave the Joy's Guaranty to induce Bank to make the 10/3/18 Term Loan to Pinnacle Health.

286.    Joy's gave the Joy's Guaranty in exchange for the 10/3/18 Term Loan Bank made to Pinnacle Health.

287.    In the Joy's Guaranty, Joy's absolutely and unconditionally guaranteed the payment and performance of the Pinnacle Health obligations to Bank.

288.    Joy's unconditionally delivered the Joy's Guaranty to Bank.

289.    Relying on the Joy's Guaranty, Bank made the 10/3/18 Term Loan to Pinnacle Health as reflected in the 10/3/18 Term Note.

290.    Joy's did not make payments on the 10/3/18 Term Loan after Pinnacle Health's default or upon Bank's acceleration and demand for immediate payment.

291.    By failing to make payments on the 10/3/18 Term Loan when Pinnacle Health failed to do so, Joy's materially breached the Joy's Guaranty.

292.    As a result of those material breaches of the Joy's Guaranty, Bank suffered damages, including the loss of the principal that it lent, interest on that money, and expenses that Bank incurred to recover those amounts.

293.    Bank has met all conditions precedent under the Joy's Guaranty.

WHEREFORE, Bank asks the Court to enter judgment in its favor against Joy's for (a) $6,325,923.25; (b) interest that accrues on the principal balances of 10/3/18 Term Loan after January 15, 2020; (c) expenses including, without limitation, reasonable attorneys' fees and expenses, relating to the 10/3/18 Term Loan that Bank has incurred and will incur to protect or enforce its rights relating to the 10/3/18 Term Loan; (d) any other amounts that Pinnacle Health is obligated to pay Bank under the 10/3/18 Loan Documents; and (e) pre-judgment interest and post-judgment interest as permitted by law, as well as any other relief that the Court deems just.

## COUNT XVII: BREACH OF GUARANTY
## (ROJANA)

294.     Bank incorporates by reference the preceding paragraphs of this Complaint.

295.     Rojana gave the Rojana Guaranty to induce Bank to make the 10/3/18 Term Loan

to Pinnacle Health.

296.     Rojana gave the Rojana Guaranty in exchange for the 10/3/18 Term Loan Bank

made to Pinnacle Health.

297.     In the Rojana Guaranty, Rojana absolutely and unconditionally guaranteed the

payment and performance of the Pinnacle Health obligations to Bank.

298.     Rojana unconditionally delivered the Joy's Guaranty to Bank.

299.     Relying on the Rojana Guaranty, Bank made the 10/3/18 Term Loan to Pinnacle

Health as reflected in the 10/3/18 Term Note.

300.     Rojana did not make payments on the 10/3/18 Term Loan after Pinnacle Health's

default or upon Bank's acceleration and demand for immediate payment.

301.     By failing to make payments on the 10/3/18 Term Loan when Pinnacle Health

failed to do so, Rojana materially breached the Rojana Guaranty.

302.     As a result of those material breaches of the Rojana Guaranty, Bank suffered

damages, including the loss of the principal that it lent, interest on that money, and expenses that

Bank incurred to recover those amounts.

303.     Bank has met all conditions precedent under the Rojana Guaranty.

WHEREFORE, Bank asks the Court to enter judgment in its favor against Rojana for (a)

$6,325,923.25; (b) interest that accrues on the principal balances of 10/3/18 Term Loan after

January 15, 2020; (c) expenses including, without limitation, reasonable attorneys' fees and

expenses, relating to the 10/3/18 Term Loan that Bank has incurred and will incur to protect or

WA 14122185.1

enforce its rights relating to the 10/3/18 Term Loan; (d) any other amounts that Pinnacle Health is obligated to pay Bank under the 10/3/18 Loan Documents; and (e) pre-judgment interest and post-judgment interest as permitted by law, as well as any other relief that the Court deems just.

### COUNT XVIII: BREACH OF CREDIT CARD AGREEMENT
### (PINNACLE HOSPITAL OP)

304.    Bank incorporates by reference the preceding paragraphs of this Complaint.

305.    The Credit Card Agreement is a valid, enforceable contract.

306.    Bank performed or tendered its performance of its obligations under the Credit Card Agreement, including by extending the Credit Card to Pinnacle Hospital OP

307.    The Credit Card Agreement provides that upon default that Bank may declare the entire unpaid outstanding balance owed under the Credit Card Agreement immediately due and requires that Pinnacle Hospital OP pay such amount.

308.    Pinnacle Hospital OP is in default under the Credit Card Agreement. Accordingly, on December 26, 2019, Bank demanded the entire balance due under the Credit Card Agreement.  Pinnacle Hospital OP materially breached the Credit Card Agreement by failing and refusing to pay the balance on the Credit Card when due.

309.    As of January 15, 2020, Pinnacle Hospital OP was indebted to Bank under the Credit Card Agreement for the outstanding charges and interest of $1,968,783.03, plus interest thereafter until paid. In addition, under the terms the Credit Card Agreement, Bank is also entitled to recover other fees and costs of collection, including attorneys' fees.

310.    As a result of Pinnacle Hospital OP's material breaches of the Credit Card Agreement, Bank suffered damages, including the loss of the principal that it lent in exchange for that agreement, interest on that money, and expenses that Bank incurred to recover those amounts.

46

311.    Bank has met all conditions precedent under the Credit Card Agreement.

WHEREFORE, Bank asks the Court to enter judgment in its favor against Pinnacle Hospital OP, for (a) $1,968,783.03; (b) interest that accrues on the balance of the Credit Card after January 15, 2020; (c) expenses including, without limitation, reasonable attorneys' fees and expenses, relating to the Credit Card that Bank has incurred and will incur to protect or enforce its rights relating to the Credit Card; and (d) pre-judgment interest and post-judgment interest as permitted by law, as well as any other relief that the Court deems just.

### COUNT XI: REPLEVIN
### (BLUE VALLEY BORROWERS AND PINNACLE HOSPITAL BOONVILLE)

312.    Bank incorporates by reference the preceding paragraphs of this Complaint.

313.    Kansas's replevin statute, K.S.A. 60-1005, applies in this action pursuant to Federal Rule of Civil Procedure 64.

314.    Bank has the right under the Security Agreements to immediate repossession of the personal property collateral described in the Security Agreements (the "Personal Property Collateral").

315.    Bank has demanded that the Blue Valley Borrowers and Pinnacle Hospital Boonville make the Personal Property Collateral available to Bank.

316.    Following Bank's demand for assembly of the Personal Property Collateral, the Blue Valley Borrowers and Pinnacle Hospital Boonville have exercised control without authority over the Personal Property Collateral.

317.    The Blue Valley Borrowers and Pinnacle Hospital Boonville have deprived Bank of its right to possess the Personal Property Collateral.

318.    The Security Agreements authorize Bank to recover its expenses, including attorneys' fees, in enforcing the Security Agreements.

47

WHEREFORE, Bank prays for an order and judgment as follows:

a.    An Order requiring Blue Valley Borrowers and Pinnacle Hospital Boonville to deliver and give up immediate possession of the Personal Property Collateral and permitting Bank to take immediate possession of the same;

b.    Judgment for Bank and against Blue Valley Borrowers, jointly and severally, for the value of the Personal Property Collateral owned by the Blue Valley Borrowers if possession cannot be delivered to Bank;

c.    Judgment for Bank and against Pinnacle Hospital Boonville for the value of the Personal Property Collateral owned by Pinnacle Hospital Boonville if possession cannot be delivered to Bank;

d.    For Bank's reasonable attorneys' fees and costs incurred in this matter.

e.    For Bank's costs and disbursements herein; and

f.    For such other and further relief as the Court deems equitable and just.

## COUNT X: APPOINTMENT OF RECEIVER
## (HEALTH CARE DEFENDANTS)

319.    Bank incorporates by reference the preceding paragraphs of this Complaint.

320.    The appointment of a receiver in a diversity case is a procedural matter governed by federal law and federal equitable principles.

321.    The Court has the authority to appoint a receiver under appropriate circumstances.

322.    Factors typically warranting the appointment of a receiver include:

a.    The probability of plaintiff's success in the action and the possibility of irreparable injury to plaintiff's interests in the property;

b.    Probability that fraudulent conduct has occurred or will occur to frustrate the plaintiff's claim;

c.    The financial position of the debtor;

d.    Imminent danger of the property being lost, concealed, injured, diminished in value, or squandered;

e.    Inadequacy of available legal remedies;

f.    Lack of a less drastic equitable remedy; and

48

g.  The likelihood that appointment of a receiver will do more good than harm.

323.  As a result of Defendants' defaults, Bank is in danger of irreparable injury and is entitled to appointment of a receiver forthwith to preserve and protect Bank's collateral.

324.  Bank satisfies the criteria warranting the appointment of a receiver, in that:

a.  Bank is likely to succeed in this action given Defendants' unmistakable defaults and breaches of the loan documents set forth above, and Bank will suffer irreparable injury to its interests in the property due to Defendants' current inability to preserve and protect Bank's collateral;

b.  The Health Care Defendants have not provided financial reporting to permit Bank to determine whether fraudulent activity has occurred;

c.  The Health Care Defendants' financial position appears to be in peril given their inability to meet their payroll obligations, inability to render payments when due, collection litigation, and their respective declining trend in accounts receivables;

d.  There is evidence that the collateral is in immediate danger of being lost, concealed, injured, diminished in value, or squandered in that Palzer attempted to close deposit accounts with Bank which could lead to diverting deposits of Bank's collateral;

e.  The legal remedies available are inadequate to protect Bank's interests;

f.  No less drastic equitable remedy is available; and

g.  It is likely that the appointment of the receiver will do more good than harm, as his appointment will safeguard the collateral for the benefit of all parties.

325.  Bank proposes that Mr. Brent King be appointed as the Court's receiver for the Health Care Defendants.  Mr. King is well qualified and fully prepared to act as receiver for the Health Care Defendants pursuant to the Order of this Court.  The receiver will file with the Clerk of this Court a bond in an amount determined by the Court to assure his conscientious performance of the duties and responsibilities imposed by the Order.  Further, the cost of the

49

receivership should be assessed and taxed as part of the costs of this action, and added to the amounts owed by Defendants to Bank.

WHEREFORE, Bank asks the Court (a) to appoint Mr. King, or another receiver to be designated by the Court, to manage the Health Care Defendants with the usual powers and duties of a receiver including the power to sell the collateral; and (b) to award the reasonable attorneys' fees and expenses that Bank has incurred and will incur to protect its rights under the Security Agreements and Deed of Trust, and for any other relief that the Court deems just.

DATED:  January 17, 2020.

Respectfully submitted,

SPENCER FANE LLP

/s/ Peter L. Riggs
Peter L. Riggs          KS #23523
Andrea M. Chase         KS #26307
1000 Walnut St., Suite 1400
Kansas City, Missouri 64106
Telephone: (816) 474-8100
Facsimile: (816) 474-3216
Email: priggs@spencerfane.com
       achase@spencerfane.com

**ATTORNEYS FOR**
**PLAINTIFF GREAT WESTERN BANK**

50

WA 14122185.1

**VERIFICATION**

STATE OF NEBRASKA      )
                             ) ss.

COUNTY OF DOUGLAS     )

I, Peter Jardine, am an officer of Great Western Bank, have personal knowledge of the facts alleged in the forgoing complaint, and to the best of my knowledge those facts are true.

Subscribed and sworn before me, a notary public in and for the county that is identified above, on January 16, 2020.

GENERAL NOTARY-State of Nebraska
AMBER R. ERNSTER
My Comm. Exp. Feb. 14, 2021

_____
Notary Public

My commission expires on:

51

WA 14122185.1